**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENISE BELL**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:11cv1031 |
| | ) | **Electronic Filing** |
| **MICHAEL J. ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

September 19, 2012

## I.   INTRODUCTION

Denise Bell ("Bell" or "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, (the "Act"), 42 U.S.C. §§ 401-433; 42 U.S.C. §§ 1381–1383f.  The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the record has been developed at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted.

## II.   PROCEDURAL HISTORY

Bell applied for DIB and SSI on or about December 22, 2008, alleging disability beginning on March 30, 2008.  R. 103-111.  The claim was initially denied on April 29, 2009.  *Id.*  Bell filed a timely request for an administrative hearing on May 1, 2009. R. 67-68.  On May

14, 2010, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Joseph F. Leary (the "ALJ"). R. 24. Bell, who was represented by counsel, appeared and testified at the hearing. R. 27-44. Mary Beth Kopar ("Kopar"), an impartial vocational expert ("VE"), also testified at the hearing. R. 44-45. In a decision dated June 7, 2010, the ALJ found that Bell was not disabled within the meaning of the Act. R. 9-23.

On July 14, 2010, Plaintiff sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. 4-5. The Appeals Council denied the request for review on June 6, 2011, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1-3. Bell then filed this civil action seeking judicial review of the Commissioner's decision.

### III. STATEMENT OF THE CASE

Bell was born on July 22, 1951, making her almost fifty-seven (57) years of age at the alleged onset of her disability. R. 110. She alleged that she was disabled due to degenerative disc disease of the lumbar spine, diabetes, and asthma. R. 11. Bell attended St. Margaret Nursing School where she earned a CAN, and later earned an associate's degree in medical coding. R. 28-30. Bell testified that she suffers from back pain, and she is unable to work because she "can't sit for long periods of time," and the cold weather and/or air conditioning make her back hurt. R. 32.

Bell alleges that, when she was going to nursing school, she fell down some steps. R. 30. She went to emergency room and was told she bruised her tail bone. *Id.* Bell was given Motrin, and the pain eventually went away. R. 30-31. About a year or so later, Bell began experiencing back pain, and her doctor, Cynthia Ayers ("Dr. Ayers"), sent her for an MRI. R. 31, 189. On November 3, 2006, Bell had an MRI which showed asymmetric disc bulging at L3-L4, with mild

degenerative changes at L4-L5 and L5-S1. R. 189. The MRI of Bell's pelvis indicated a normal sacrum. R.190. There is no indication that Bell received any follow-up treatment for her back.

The record indicated that Bell's next examination occurred on March 22, 2009, nearly one (1) year after her application for social security benefits, when Abdul Q. Khan M.D. ("Dr. Khan"), a state agency consultant, conducted a disability exam. R. 199. Dr. Khan found that Bell's description of pain in the left lower back that radiated down her left lower extremity did not correlate with the MRI findings. R. 202. Bell was able to move all four (4) extremities well, she walked with a normal gait, spine, flexion and extension were normal, and her strength was 5/5 bilaterally. *Id.* Dr. Khan further found that Bell had no range of motion restrictions in her spine, hip, shoulders, elbow or wrist. R. 206-207. The Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities completed by Dr. Khan indicated that Bell had no limitations on lifting, carrying, standing, walking, sitting, pushing or pulling. R. 204-205.

Bell was examined by Robert G. Liss, M.D. ("Dr. Liss") of the Orthopedic Associates of Pittsburgh on April 1, 2009. R.213. Dr. Liss found that Bell's gait and station were normal. *Id.* She had full lumbar range of motion with increased pain on extension, lateral tilt and rotation. *Id.* Bell had a negative straight leg raise and full painless range of motion of both hips. *Id.* Dr. Liss noted normal lower extremity reflexes and sensation. *Id.* Dr. Liss also reviewed Bell's MRI and found it "fairly normal" with minor degenerative changes. *Id.* Dr. Liss prescribed a brace, physical therapy and referred Bell to the Pain Clinic. *Id.*

On April 6, 2009, Bell went to Allegheny Chesapeake Physical Therapy for treatment of her back pain. R. 219. The Physical Therapist assessed Bell with mechanical low back pain due to degenerative changes of the lumbar spine, and recommended a P/T plan. R. 220. The short term goal was to decrease Bell's back pain and increase her range of motion. Her prognosis was good. *Id.*

3

On April 7, 2009, Bell went to the pain clinic at the University of Pittsburgh Medical Center. R. 227-229. Bell was evaluated by Todd A. Pepper, D.O. ("Dr. Pepper"), who found that Bell was able to rise from a seated position without difficulty, her gait was normal and she had full range of motion in the lumbar spine in both flexion and extension, with some pain with extension. R. 228. Dr. Pepper found that Bell's straight leg raise test was negative, she had full range of motion in her hips, and she had 5/5 muscle strength throughout. *Id.* A lumbar facet nerve block was recommended, but Bell chose not to move forward with the procedure. R. 229.

On April 14, 2009, Bell reported to her physical therapist that her new medication along with her physical therapy had decreased her lower back pain to zero (0) to one (1) on a scale of ten (10) with all activity. R 265. On April 22, 2009, Bell reported pain of one (1) to two (2) on a scale of ten (10). R. 267. On September 8, 2009, Bell indicated to her therapist that her pain had decreased from a 10/10 at worst to a 4/10 at worst, and that she had improved her walking tolerance to three (3) miles. R. 244. On October 8, 2009, Bell reported a greater than seventy-five (75%) per cent improvement, with a pain level of 4/10 at worst with decreased frequency. R. 242. Her tolerance to standing and walking increased to approximately sixty (60) minutes. *Id.*

Bell returned to the pain clinic on September 3, 2009. R. 273. She displayed no overt pain behaviors, though her lower back revealed minimal tenderness over her lumbar spine and paraspinal muscles. R. 274. Bell's straight leg raise test was negative, she was able to flex and extend her lumbar spine without limitation, and her lower extremities revealed no sensory or motor deficits. *Id.* Bell was started on Neurontin. *Id.* On October 19, 2009, Bell reported to the pain clinic and indicated that she suffered from intermittent sharp pain in her back. R.271. She exhibited no overt pain behaviors, however, and a straight leg raise and joint maneuvers were negative. *Id.* The pain clinic advised that she continue with one Neurontin tablet at bedtime. *Id.*

Bell returned to the pain clinic on January 13, 2010, complaining of a pain level of 10/10 when she walks too much, but the pain diminishes with rest. R. 284. Her gait was within normal limits, she displayed no overt pain behaviors, and she exhibited a full range of motion and strength of bilateral extremities. *Id.* The pain clinic increased her dose of Neurontin to 900 mg as tolerated. *Id.*

The record also indicates that Bell began seeing Balakrishna R. Ragoor, M.D. ("Dr. Ragoor") of Forbes Internal Medicine in April of 2009, for various complaints including bronchitis, sinusitis, diabetes, shortness of breath, and smoking cessation. R. 290-297. Aside from a visit on July 29, 2009, when Bell's stated reason for seeing the doctor was to obtain a refill on her pain medication, it does not appear that Dr. Ragoor treated her for her lower back problem. R. 296. On December 9, 2009, Dr. Ragoor completed a Physical Residual Functional Capacity Questionnaire in which he opined that Bell had moderate to severe back pain which limited her daily living activities and ability to work consistently. R. 275. Dr. Ragoor identified right lumbosacral spine tenderness to palpation with difficulty bending. *Id.* He opined that Bell's pain would interfere with concentration needed to perform simple work tasks, and that she was incapable of tolerating even low stress jobs. R. 276. Dr. Ragoor found that Bell could sit six (6) hours and stand/walk two (2) hours in an eight-hour workday; could rarely lift or carry less than ten (10) pounds, and could never twist, stoop, crouch, squat or climb stairs. R. 277. On March 3, 2010, Dr. Ragoor completed another Physical Residual Functional Capacity Questionnaire in which he found that Bell could sit only two (2) hours and stand/walk less than two (2) hours in an eight-hour workday. R. 280. Dr. Ragoor referenced Bell's MRI dated November 3, 2006, in his evaluation. R. 279.

On January 30, 2009, Bell completed a Function Report for the Social Security Administration in which she indicated that: (1) she had no problem with her personal care (R.

150); (2) she prepared three (3) balanced meals and two (2) snacks per day (R. 151); (3) she

vacuumed and dusted every day, mopped the kitchen and bathroom weekly, and did the laundry

and ironing (R. 151); (4) she went outside every day, did her own shopping, attended church

weekly and went to exercise class four (4) times per week (R. 152-153); (5) she attended college

courses Wednesday and Thursday evenings from 6:00 p.m. to 9:00 p.m. (R. 149, 153); (6) she

takes care of her own financials (R. 152); and (7) she was able to follow written and oral

instructions, got along well with authority figures, and handled stress and changes in routine very

well (R.154-155).

At the hearing, Bell testified that she no longer drove because she sold her car, and used

the bus to get around.  R. 34.   She reiterated that she had no problems taking care of herself, but

she had problems cleaning the house and going up and down steps.  R. 36.  Bell testified that she

only takes the Neurontin before she goes to bed, even though she is supposed to take it three (3)

times per day, because it makes her sleep.  R. 38.

The VE testified that Bell's associate degree in medical coding provides her with a direct

entry into medical coding employment, which is characterized as skilled, sedentary exertion.  R.

45.  The VE also testified that pain at an 8/10 or greater precluded employment, and being

unable to attend work three (3) times per month because of pain also precluded sustaining

employment.  R. 45.

After a comprehensive review of the record, the ALJ determined that Bell had not

engaged in substantial gainful activity since March 30, 2008, the alleged onset date. R.11.

The ALJ found that Bell had severe impairments, including: degenerative disc disease of the

lumbar spine, diabetes mellitus, and asthma.  *Id.*  These impairments caused more than minimal

limitation on Bell's ability to perform work-related activities.  *Id.*  The ALJ concluded that Bell's

impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ determined that Bell had the "residual functional capacity"[1] ("RFC") to perform the full range of work at the sedentary level of exertion.  R. 12.  The ALJ found that Bell's subjective complaints were not as severe or limiting as she alleged, and were not supported by the objective medical evidence, the nature of her medical care or admitted daily activities.  R. 21. Moreover, because Bell had the capacity for direct entry into skilled sedentary work, a finding of not disabled was directed pursuant to grid Rule 201.05.  R. 22.  Based upon the testimony of the VE, and considering Bell's age, education, work experience, and residual functional capacity, the ALJ found Bell capable of making a successful adjustment to work that exists in significant numbers in the national economy, and therefore, a finding of not disabled was appropriate.  R. 22.

IV.  **STANDARD OF REVIEW**

The standard of review in a social security case is whether substantial evidence exists in the record to support the Commissioner's opinion.  *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Additionally, if the Commissioner's findings of fact are supported by substantial evidence, they must be accepted as

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a).  The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process.  20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

conclusive. 42 U.S.C. 405 (g); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In

making this determination, the district court considers and reviews only those findings

upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by

supplying additional facts from its own independent analysis of portions of the record which

were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir.

2001). The Court's review is limited to the four corners of the ALJ's decision. *Cefalu v.

Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

When resolving the issue of whether a claimant is disabled and whether the claimant is

entitled to benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §

404.1520. The Supreme Court summarized this five step process:

> If at any step a finding of disability or non-disability can be made,
> the SSA will not review the claim further. At the first step, the
> agency will find non-disability unless the claimant shows that he is
> not working at a "substantial gainful activity." §§ 404.1520(b),
> 416.920(b). At step two, the SSA will find non-disability unless
> the claimant shows that he has a "severe impairment," defined as
> "any impairment or combination of impairments which
> significantly limits [the claimant's] physical or mental ability to do
> basic work activities." §§ 404.1520(c), 416.920(c). At step three,
> the agency determines whether the impairment which enabled the
> claimant to survive step two is on the list of impairments presumed
> severe enough to render one disabled; if so, the claimant qualifies.
> §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on
> the list, the inquiry proceeds to step four, at which the SSA
> assesses whether the claimant can do his previous work; unless he
> shows that he cannot, he is determined not to be disabled. If the
> claimant survives the fourth stage, the fifth, and final, step requires
> the SSA to consider so-called "vocational factors" (the claimant's
> age, education, and past work experience), and to determine
> whether the claimant is capable of performing other jobs existing
> in significant numbers in the national economy. §§ 404.1520(f),
> 404.1560(c), 416.920 (f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted). Factual findings pertaining

to all steps of the sequential evaluation process are subject to judicial review under the

8

"substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

**V.    DISCUSSION**

Under the Social Security Act, a "person who has a 'disability' is entitled to SSI payments". *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). A disability is the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Ramirez v. Barnhart*, 372 F.3d at 550. However, a claimant is potentially eligible for benefits only if the claimant's impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In this instance, the ALJ proceeded through all five steps in the sequential evaluation process and found that Bell was capable of performing other jobs existing in the national economy, and therefore, was not disabled under the Act.

Bell first contends that the ALJ erred in evaluating her subjective complaints regarding alleged disabling back pain. Bell argues that her complaints of debilitating pain are supported by objective medical evidence, as well as the expert medical opinion of her treating physician. Specifically, she contends that her extensive treatment history, including physical therapy sessions, treatment at the pain clinic, treatment by specialists at the Foot and Ankle Institute, and several MRI's support her complaints of disabling pain. The Court finds no merit to Bell's contentions.

Bell testified that she was treated at the emergency room for a bruised her tail bone which resulted from a fall. R.30. She was given Motrin, and the pain eventually went away. R.

30-31.  This event must have occurred in or around October of 2005, because Bell testified that about a year or so later, she complained of back pain, and Dr. Ayers sent her for an MRI.  R. 31, 189.  Bell had an MRI[2] on November 3, 2006, which showed asymmetric disc bulging at L3-L4, with mild degenerative changes at L4-L5 and L5-S1.  R. 189.  The MRI of Bell's pelvis indicated a normal sacrum.  R.190. There is no indication in the record that Bell received any follow-up treatment or examination until April of 2009.

Dr.  Liss examined Bell on April 1, 2009, and found that her gait and station were normal.  R. 213.  She had full lumbar range of motion with increased pain on extension, lateral tilt and rotation.  *Id.* Bell had a negative straight leg raise and full painless range of motion of both hips.  *Id.*  Dr. Liss noted normal lower extremity reflexes and sensation.  *Id.*  Dr. Liss also reviewed Bell's MRI and found it "fairly normal" with minor degenerative changes.  *Id.*  Bell was also treated at the pain clinic at the University of Pittsburgh Medical Center on April 7, 2009, September 3, 2009, October 19, 2009 and January 13, 2010.  Physical examinations at the clinic indicated Bell displayed no overt pain behaviors, though her lower back revealed minimal tenderness over her lumbar spine and paraspinal muscles, straight leg raise tests and joint maneuvers were negative, she was able to flex and extend her lumbar spine without limitation, she exhibited a full range of motion and strength of bilateral extremities, her lower extremities revealed no sensory or motor deficits, and her gait was within normal limits. R. 228, 271, 274, 284.  Neither Dr. Liss nor the physicians at the pain clinic indicated that Bell suffered from debilitating pain.

---

[2]    It must be noted that Bell's November 3, 2006, MRI is the only MRI indicated in the entire record, and all references in the record by the treating physicians, therapists, and consultative physicians to MRI results refer to the November 3, 2006 MRI.

It is well established that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. § 404.1529(c), and an ALJ may reject a claimant's subjective testimony if [he] does not find it credible so long as [he] explains why [he] is rejecting the testimony." *Hall v. Comm'r of Soc. Sec.*, 218 Fed. Appx. 212, 215 (3d Cir. 2007) (citing *Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 433 (3d Cir. 1999)); SSR 96-7p, 1996 WL 374186 (S.S.A.). If supported by substantial evidence, the ALJ's credibility findings may not be disturbed on appeal. *Hirschfeld v. Apfel*, 159 F. Supp. 2d 802, 811 (E.D. Pa. 2001). Moreover, a claimant's statements about his or her symptoms do not alone establish disability. 42 U.S.C. § 423 (d)(5)(A); 20 C.F.R. § 404.1529(c). Rather, a disability must be proven through objective medical evidence.  The ALJ must consider a claimant's daily activities, the location, frequency, and intensity of the symptoms, the type and dosage of medication, and any other measures used to relieve any alleged symptom. *See* 20 C.F.R. § 404.1529(c)(3) (2003). In making such determinations, however, the ALJ is given great discretion, and his or her findings are entitled to judicial deference. *See Bembery v. Barnhart*, 142 Fed. Appx. 588, 591 (3d Cir. Pa. 2005); *Van Horn v. Schweiker,*717 F.2d 871, 873 (3d Cir. 1983).

Here, in finding Bell's complaints not entirely credible, the ALJ considered her subjective complaints, but "considered those complaints in light of the medical evidence, her treatment history and all of the other evidence of record." *Hall v. Comm'r of Soc. Sec.*, 218 Fed. Appx. at 215. The ALJ complied with the appropriate regulations and considered all of the relevant evidence in the record, including the medical evidence, Bell's activities of daily living, her medications and the extent of her treatment, her statements about function in a filing with the Social Security Administration and reports by her examining and consultative physicians. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Social Security Ruling 96-7p, 1996 SSR LEXIS 4. Specifically, the ALJ found that, although the State agency found Bell had no exertional

11

limitations in April of 2009, her problems with degenerative disc disease, diabetes and asthma provide a basis for pain and discomfort, but not to the extent that sedentary work must be ruled out. The Court finds that the ALJ adequately explained the basis for his credibility determination (R. 12-21), and that such determination is supported by substantial evidence.

Bell also contends that the ALJ erred by failing to give controlling weight to the medical opinion of Dr. Ragoor, one of her treating physicians. The ALJ, not the treating or examining physicians or State agency consultant, must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although the opinions of treating and examining physicians often deserve more weight than the opinions of doctors who review records, the Third Circuit clearly holds that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) *see also* 20 C.F.R. § 404.1527(d)(1)–(2). State agent opinions also merit significant consideration. *See* SSR 96-6p, 1996 SSR LEXIS 3 ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .").

An ALJ, however, may not simply "ignore the opinion of a competent, informed, treating physician." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986). Further, when making a residual functional capacity determination, "an ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). The treating physician's opinion is entitled to controlling weight if the "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. §

12

404.1527(d)(2).  In making a RFC determination, then, the ALJ must consider all evidence before him, and although the ALJ may weigh credibility, he must explain the weight given to physician opinions and the degree to which a claimant's testimony is credited, as well as indicate which evidence he rejects and his reason for discounting such evidence. *See* 20 C.F.R. § 404.1527(f)(2)(ii); *see also Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence and adequately explained his assessment of Dr. Ragoor's opinions in his decision. With regard to Dr. Ragoor, the ALJ explained his rationale for not according the doctor's opinions controlling weight, specifically noting that his opinions were not supported by the evidence of record. Moreover, the ALJ comprehensively reviewed and discussed all of the medical evidence in the record.  Dr. Ragoor became Bell's primary care physician after the death of Dr. Ayers.  R. 35. Dr. Ragoor is not a back specialist or an orthopedist.  His progress notes indicate that he saw Bell six (6) times from April 17, 2009, to March 31, 2010.  There is no indication that he treated her back problem, nor is there any indication in the progress notes that Bell suffered from debilitating pain such that she was unable to work.  Moreover, the Court is unable to find any objective medical evidence in Dr. Ragoor's progress notes to support his opinions on Bell's residual function capacity.  Based upon a review of the record, this Court finds that the ALJ's evaluation of the medical evidence, including the opinions of Dr. Ragoor, is supported by substantial evidence.

**VI.    CONCLUSION**

Based upon the forgoing, the decision of the ALJ finding that Bell was not disabled under the Act is supported by substantial evidence in the record.  Accordingly, Bell's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted. The decision of the ALJ is affirmed.  An appropriate Order follows.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Kelie C. Schneider, Esquire
       Paul Kovac, AUSA

       (*Via CM/ECF Electronic Mail*)